BENJAMIN B. WAGNER
United States Attorney
JEFFREY A. SPIVAK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>          v.<br><br>APPROXIMATELY $11,425.00 IN U.S. CURRENCY,<br><br>                        Defendant. | CASE NO.  1:14-MC-00016-LJO<br><br>CONSENT JUDGMENT OF FORFEITURE |

Pursuant to the Stipulation for Consent Judgment of Forfeiture, the Court finds:

1. On or about August 21, 2013, an officer with the California Highway Patrol seized the defendant approximate $11,425.00 in U.S. currency (hereafter "Defendant Currency").

2. The DEA commenced administrative forfeiture proceedings, sending direct notice to all known potential claimants and publishing notice to all others. On or about November 6, 2013, the DEA received a claim from Galvan asserting an ownership interest in the Defendant Currency.

3. The United States represents it could show at trial that:

    a. On August 21, 2013, at approximately 12:50 p.m., an officer with the California Highway Patrol initiated a traffic stop on a black 2007 Dodge Charger with California license plate 6DHM070 driven by Cesar Huerta Galvan for violation of

California Vehicle Code § 21703 – Following to Close.  The officer made contact with the driver and passenger of the vehicle.  The driver was identified as Cesar Huerta Galvan and the passenger was identified as Saul Huerta Galvan.  Upon making contact with the driver, the officer observed him to be nervous and looking straight ahead.  The officer explained to the driver as to the reason for the stop.  Cesar Huerta Galvan advised officer that he did not have a driver's license and presented the officer with an identification card from Mexico.  The officer then had Cesar Huerta Galvan exit the vehicle and then advised him to wait next to the officer's marked patrol unit.  The officer noticed that Cesar Huerta Galvan avoided making eye contact with the officer.  Cesar Huerta Galvan stated that he was driving home and that he had gone to Livingston, California for a couple of hours to visit a cousin.

   b. The officer then made contact with the passenger identified as Galvan.  The officer asked Galvan to obtain the registration and insurance for the vehicle.  The officer observed that Galvan appeared nervous and was fumbling through the glove box in an effort to retrieve the documents.  Galvan then attempted to hand the officer a receipt instead of the requested documents.  Galvan advised the officer that they had gone to Livingston, California to visit a cousin however, Galvan provided the officer with a different name for the cousin than had Cesar Huerta Galvan.  The officer then asked if there were any weapons, drugs or large sums of money in the vehicle.  Saul Huerta Galvan denied each but looked way when the officer asked about the money.

   c. The officer issued Cesar Huerta Galvan a citation for driving unlicensed and following too close to another vehicle.  The officer filled out a storage form for the vehicle which required providing an inventory of the vehicle.  The officer began an inventory and located a pink gift bag that was located behind a speaker box in the trunk.  Inside the pink bag were bundles of an undetermined amount of U.S. currency.

   d. The officer retrieved the pink bag with the currency and placed it into the vehicles wheel well then deployed his narcotic detecting canine "Sepp," who gave a positive alert in the trunk area where the officer located the pink bag with currency.  The

1  vehicle was subsequently towed to the Merced California Highway Patrol office.  A second
2  officer transported Cesar Huerta Galvan and the initiating officer transported Saul
3  Galvan to the Merced California Highway Patrol office for further investigation.  Upon
4  arrival at the Merced California Highway Patrol office, the initiating officer again
5  deployed his narcotic detecting canine "Sepp" and conducted a control sniff of the U.S.
6  currency.  Sepp gave a positive alert in the location where the bag with the currency was
7  placed.

8       e.     At 1:30 p.m., a task force agent arrived at the Merced office to conduct
9  an interview of Cesar Galvan and Saul Galvan.  At approximately 3:15 p.m., the agent
10 interview Cesar Galvan.  Another officer was present to provide Spanish translation.
11 Cesar Galvan was advised of his <u>Miranda</u> rights, which he waived.  Cesar Galvan stated
12 the money in the pink paper bag belonged to his brother Saul Galvan and came from
13 selling a 2005 Chevrolet Silverado in Mexico.  Cesar Galvan said he has lived in California
14 for four years, three of those years in Orosi, California.  Cesar Galvan said his brother,
15 Saul Galvan, told him that there was money in the car but did not tell him where it was
16 located or how much was in the bag.  When asked if he had any claim to the money, he
17 said no.  At the conclusion of the interview, Cesar Galvan disclaimed ownership of the
18 currency and signed a disclaimer form.

19      f.     At approximately 3:50 p.m., the agent interviewed Saul Galvan.
20 Another officer was present to provide Spanish translation.  Saul Galvan was advised of
21 his <u>Miranda</u> rights, which he waived.  Saul Galvan stated that the money belonged to him
22 and his brother, Cesar Galvan.  Saul Galvan stated that $5,500 was his and the other
23 $5,500 was his brother's.  Saul Galvan said the money was earnings from work that he
24 and his brother had saved, plus $2,000 borrowed from a cousin, Marlene, in Orosi,
25 California.  Another $1,000 was borrowed from a friend in Orosi, California.  Saul Galvan
26 said the money was going to be used to buy a car.  Saul Galvan then advised that he had
27 driven to Livingston, California from Orosi, California to look at a car he had heard about
28 and to visit a cousin who lives in Livingston.  Saul Galvan said he did not like the car so

CONSENT JUDGMENT OF FORFEITURE      3

1 he did not buy it and that he and Cesar Galvan went to their cousin's house and left after
2 the short visit.  Saul Galvan said they were on their home to Orosi, California when they
3 were stopped by the police.

4     4. As a result of the foregoing, the United States believes that it could establish
5 at trial that the Defendant Currency is forfeitable to the United States pursuant to 21
6 U.S.C § 881(a)(6).

7     5. Without admitting the truth of the factual assertions contained in this
8 stipulation, Galvan specifically denying the same, for the purpose of reaching an amicable
9 resolution and compromise of this matter, Galvan agrees that an adequate factual basis
10 exists to support forfeiture of the Defendant Currency.

11     6. The Defendant Currency is in the custody of the United States Marshals
12 Service, Eastern District of California.

13     7. Galvan hereby acknowledges that he is the sole owner of the Defendant
14 Currency, and that no other person or entity has any legitimate claim of interest therein.
15 Should Cesar Huerta Galvan or any person institute a kind of claim or action against the
16 government with regard to its forfeiture of the Defendant Currency, Galvan shall hold
17 harmless and indemnify the United States.

18     8. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1345 and
19 1355, as this is the judicial district in which acts occurred giving rise to the forfeiture.

20     9. This Court has venue pursuant to 28 U.S.C. § 1395, as this is the judicial
21 district in which property was seized.

22     10. The parties herein desire to settle this matter pursuant to the terms of a duly
23 executed Stipulation for Consent Judgment of Forfeiture.

24 Based upon the above findings, and the files and records of the Court, it is hereby
25 ORDERED AND ADJUDGED:

26     1. The Court adopts the Stipulation for Consent Judgment of Forfeiture entered
27 into by and between the parties.

28     2. All right, title, and interest in the $7,425.00 of the Defendant Currency,

including any interest that may have accrued on the entire $11,425.00 amount, seized on or about August 21, 2013, shall be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), to be disposed of according to law.

3. Upon entry of a Consent Judgment of Forfeiture, but not later than 60 days thereafter, $4,000.00 of the Defendant Currency, shall be returned to Galvan, through his attorney Kevin G. Little, 1099 E. Champlain Drive, No. A124, Fresno, California 93720, telephone (559) 412-6050.

4. Plaintiff United States of America and its servants, agents, and employees and all other public entities, their servants, agents and employees, are released from any and all liability arising out of or in any way connected with the seizure and/or forfeiture of the Defendant Currency.  This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said seizure and/or forfeiture, as well as to those now known or disclosed.  Galvan agrees to waive the provisions of California Civil Code § 1542, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

5. Pursuant to the Stipulation for Consent Judgment of Forfeiture filed herein, the Court finds that there was reasonable cause for the seizure of the Defendant Currency and hereby enters a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 in the form of this Judgment.

6. All parties will bear their own costs and attorneys' fees.

The clerk is directed to close this action.

IT IS SO ORDERED.

Dated:   **March 13, 2014**                      **/s/ Lawrence J. O'Neill**
                                                 UNITED STATES DISTRICT JUDGE